The opinion of the Court was delivered by
Bermudez, C. J.
Tliis is an action by the heirs of P. A. B. Lesseps to recover certain real estate, known as the “ St. Sophie ” Plantation, situate in the parish of Plaquemines.
The defense is: res judicata and the prescription of five years.
There was judgment sustaining the pleas, and the plaintiffs appeal.
It appears from the evidence adduced, that the property in question was inventoried among the assets of the deceased. There is no dispute that it then belonged to him. The contention is, as to whether it has since passed from the estate.
The defendants claim that it was sold by the sheriff, under a judgment in the suit of the Police Jury against the estate, brought in April, 1868, for the recovery of costs for rebuilding a levee, etc., in front of • the plantation; that at the offering in January, 1869, it was adjudicated to D. B. Macarty, their common author, who paid the price in ready money; that subsequently, proceedings for a monition were initiated and ultimated in a judgment, rendered in November, 1871, homologating the sale, and that afterwards the sale was mentioned by the executor in his final account of the deceased, which was homologated without opposition.
The plea of res judicata rests upon the judgment of homologation, and the plea of prescription is based on tile time which has elapsed since the sheriff’s adjudication in 1869.
In reply, the plaintiffs say: That the law under which the Police Jury suit was instituted and the property sold, had been repealed two years before the bringing of the suit; that the judgment and the sale are nullities ; that the monition proceedings and the homologation *115 of tlie sale of 1869, axe of no effect, as they cannot cure the defects of a judicial sale in a case where the parties were not cited, and where the provisions of the law were violated.
The Record shows that the suit was brought by the Police Jury j that service was accepted by one of the heirs of Lesseps, for himself, and for the other heirs concerned ; that a citation was published j that a default was entered and subsequently confirmed; that execution issued; that the property was seized and that instructions were given for the sale, both by August Lesseps, as owner of one-tliird, and by Bernard Sordid, as executor of Alex. Lesseps, owner for the remaining two-thirds j that the'property was offered and adjudicated on the 2d January, 1869, to D. B. Macarty, for $4854, paid cash, and that the sheriff’s deed was recorded on the 28th of the same month.
It further appears that in February, following, the purchaser applied for a monition; that, after publication and in the absence of opposition, the sale was confirmed and homologated, the judgment being signed on the 24th of November.
The ground upon which the plaintiffs rely to have the sale and the monition declared nullities is, that the act of the legislature of February 17th, 1866, relative to the Board of Levee Commissioners, repealed all former laws for the construction of levees at the expense of riparian proprietors, and in support of that position, reference is made to the case of Tardos, 22 A. 58.
It is claimed by the defendants, that the law under which the proceedings were had in 1868, for the payment of the work done in front of the St. Sophie Plantation, was a special statute passed in 1840, No. 60, and subsequently amended in 1848, No. 38, Extra Session, and that the Act of 1866, being a general statute, did not repeal those special statutes.
We do not think it necessary to decide either that question, or that of res judicata resulting from the homologation of the monition, or that of prescription, as we think that in consequence of facts which have occurred since the proceedings by the Police Jury and the judgment in their favor, the sale under it is valid and binding.
We have seen that both the co-proprietor, for one-third, and the estate of Lesseps, in the person of its representative, owning the remaining two-thirds, have given instructions as to the mode or manner in which the sale was to be effected.
Whatever objections might be and are urged against the ratification set up, must prove of little or no weight, when it is considered that, in the account which was presented to the Probate Court in 1870, it'is distinctly stated, that “ the St. Sophie Plantation had been seized and *116 sold by the sheriff of the Parish of Plaquemines, on the 2d of January, 1869, to satisfy a judgment obtained by the Police Jury of said Parish.”
This account was duly homologated in June of the following year. The executor was afterwards discharged in April, 1875.
The objection, that this judgment of homologation is not binding on the heirs, because they were not cited, otherwise than by advertisement, is unwholesome.
The succession of Lesseps was notoriously, thoroughly insolvent. Its creditors were, to all appearances, the only parties interested in its speedy and economical liquidation and settlement. His heirs had none but a contingent residuary interest, depending upon a balance in the hands of the succession representative, in money or property, after payment of all the acknowledged and recognized creditors. It is then, and then only, that their interest could take semblance and form. They had not accepted the succession unconditionally and, even then, could not have taken the seizin from the executor, without providing him with the means to pay the creditors, these insisting. The fact is, they did not do so. Their interest being very remote, they stood aloof from the proceedings, totally indifferent to the course to be pursued.
There would have been no necessity to notify them of any application for the sale of the property. The advertisements preceding the ' sale would have been sufficient notice. They would have had the right to arrest the sale by paying the debts, or showing that none existed.
• In cases of thoroughly insolvent successions, it is an error to suppose that the law requires that the settlement of the same shall be obstructed and rendered cumbersome and more onerous, by the giving of notices of any kind to the heirs, whoever they be, of age or minors, present or absent; for it is only on the contingency that there exists a residue, in other words, that the forces of the succession are ample to satisfy and discharge its liabilities, and that there shall remain a surplus, that the heirs are considered as having an interest involved in it and must be notified.
The duty of the heirs, or of their representatives, is to keep a watchful eye on the proceedings, as they are developed, and to make opportune opposition, in the form pointed out by law, to whatever might prejudice them.
Why should they, by representation of the insolvent deceased, be entitled to such notices and citations, when their author, had he lived and made a judicial surrender of his property to his creditors, would not himself have been entitled to any?
The affairs of an insolvent debtor going to judicial bankruptcy are settled without such formality. The affairs of an insolvent deceased *117 should not be required to be liquidated in a different mode, in the absence of any law to the contrary. Ubi eadeni ratio, eadern est lex.
We regard the law, relative to notices to heirs in successions, as requiring such, only where the successions are really or apparently solvent, and it is proposed to establish and apportion a residue among the heirs of the deceased. Heirs opposing an account could not disturb it, unless error, fraud or injury were shown. They cannot be permitted to set up, after judgment, that which they could have alleged and did not aver before judgment, so as to upset what was concluded by the judgment homologating the account, and overturn titles resting upon the proceedings.
If heirs stand by and tolerate the settlement of an estate in which they are concerned, by the sale of its property, by application of its funds, by an account exhibiting its assets and liabilities, and a.deficiency towards full payment, and permit the account to be published •and homologated, without opposition on their part, the ■ proceedings thus culminating, become .conclusive upon them, and cannot afterwards be questioned by them.
The judgment is. binding on the creditors and legatees, who are primarily interested, and operates in like manner on the heirs, who are secondarily concerned, when there exists no residue in their favor. The binding effect, which the judgment on the account thus acquires, continues afterwards.
The principle which dispenses with notices of sale to heirs, when 'a sale is sought to pay the debts and charges, .even in -a solvent succession, certainly relieves them in insolvent estates, throughout all the proceedings, specially concerning the, account showing the active and passive and the,insolvent condition of the succession, and it is manifest from it that no residue accrues to the heirs. These conclusions are sustained both by reason and law and by, equity. ■.
We deem it sufficient to refer to-aivthoriti.es, without analyzing them separately. 6 L. 225; 10 R.457; 12.R. 548 ; 2 A. 503; 14 A. 706; 15 A_ 678 ; 21 A. 508 ; 24 A. 343, 530 ; 28 A. 633 ; 29 A. 379, 381, 397 j 30 A. 304, 894 ; 31 A. 280 j 32 A. 971; 33 A. 469.
The plaintiffs present themselves with bad grace to claim this property, the proceeds of the sale'of which were paid cash to the sheriff and applied to the payment of a work done for its preservation. 14 A, 622 ; 21 A. 508 j 3 A. 564; 6 A. 51, 581; 8 A. 503; 12- A. 271: 27 A. 563 j 14 A. 777 j 31 A. 450.
In the last case the late Court well observed, in circumstances somewhat similar: ......
■ “ The divine command to honor thy father and thy mother, is but the echo of a sentiment that nature has planted deep in the human *118 heart and the laws of all countries, dealing with men’s acts, and yet enforcing that sentiment, prohibit the child from taking the father’s property, unless he pays the father’s debts.”
We consider that by the final account and tableaux presented and homologated without opposition, the status of the property claimed in this writ has been adjusted and settled as having passed from the estate of the deceased.
The District Judge so viewed the matter. We find no error in his finding.
It is therefore ordered that the judgment appealed from be affirmed, with costs.